UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MIGUEL HERNANDEZ-LANDEROS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

4:14-cv-58
4:13-cr-116-4

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Miguel Hernandez-Landeros has filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. CV ECF No. 1.[1] For the reasons set forth below, Hernandez-Landeros's petition should be **DENIED**.

## STATEMENT OF THE CASE

On October 30, 2013, Hernandez-Landeros pleaded guilty to possessing a firearm and ammunition as an illegal alien, in violation of 18 U.S.C. § 922(g)(5). CR ECF Nos. 111; 125.[2] After accepting Hernandez-Landeros's plea, the Court sentenced him to 46 months' imprisonment. CR ECF No. 124. Then, on March 21, 2014, Hernandez-Landeros filed a § 2255 motion alleging as grounds entitling him to relief that he received ineffective assistance of counsel and that his plea was involuntarily entered. CV ECF No. 1. The Government timely responded to that motion, CV ECF No. 3, and, on May 15, 2014, Hernandez-Landeros filed a reply to the Government's response, CV ECF No. 4.

---

[1] Citations to CV ECF refer to docket entries in *Hernandez-Landeros v. United States*, 4:14-cv-58.
[2] Citations to CR ECF refer to docket entries in *United States v. Hernandez-Landeros*, 4:13-cr-116-4.

AO 72A
(Rev.8/82)

On January 22, 2015, United States Attorney Edward J. Tarver disclosed to the Court information regarding an "improper relationship" between Assistant United States Attorney ("AUSA") Cameron Ippolito and ATF Special Agent Lou Valoze. *In re Cameron Ippolito & Lou Valoze*, 2015 WL 424522, at *1 (S.D. Ga. Jan. 30, 2015). The Court ordered that the United States Attorney "submit a list of all cases . . . in which AUSA Ippolito and Agent Valoze collaborated." *Id.* Hernandez-Landeros's criminal case was among those cases that the United States Attorney identified to the Court.

In the wake of this revelation, Hernandez-Landeros sought leave to supplement his original § 2255 petition. CV ECF No. 6. The Court granted leave, CV ECF No. 10, and Hernandez-Landeros supplemented his petition to incorporate a claim related to the newly revealed information, CV ECF No. 11.

## DISCUSSION

Hernandez-Landeros seeks relief on three separate grounds. First, he argues that his counsel at sentencing was ineffective for failing to object to the calculation of his base offense level, for failing to object to a sentencing enhancement, and for failing to discuss with him an appeal of his sentence. CV ECF No. 5. Second, he argues that his guilty plea was involuntary. *Id.* at 6. Finally, he argues that the government's failure to disclose the improper relationship between Ippolito and Valoze was misconduct that inappropriately induced his guilty plea. CV ECF No. 11 at 2. None of Hernandez-Landeros's arguments justify granting him relief.

### I. Ineffective Assistance Claims

The United States Constitution grants to all criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). To prevail on

2

a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. *Id.* at 685-86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). "There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance." *Davis v. United States*, 404 F. App'x 336, 338 (11th Cir. 2010) (citing *Strickland*, 466 U.S. at 689). "It is petitioner's burden to 'establish that counsel [performed] outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" *LeCroy v. United States*, 739 F.3d 1297, 1312 (11th Cir. 2014) (second alteration in original) (quoting *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation marks omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Id.* at 1312-13 (quoting *Butcher*, 368 F.3d at 1293).

### A. Failure to Object to Hernandez-Landeros's Base Offense Level

At sentencing, the Court adopted the probation officer's conclusions as to the applicable advisory guidelines. CR ECF No. 156 at 4. Neither Hernandez-Landeros nor his attorney objected. *Id.* The presentence investigation report calculated his base offense level to be 20, though it was then adjusted to 23. *See* CV ECF Nos. 1 at 11; 3 at 6.

3

Hernandez-Landeros argues that his base offense level was erroneously calculated to be 20; he argues that the appropriate level was 14. CV ECF No. 1 at 14. He cites to U.S.S.G. § 2K2.1(a)(4)(A),[3] arguing that the Court erroneously applied it to him. *Id.* Hernandez-Landeros is correct; § 2K2.1(a)(4)(A) does not apply to him. But he ignores § 2K2.1(a)(4)(B), which does. That section indicates that a base offense level of 20 is appropriate if

> the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; or (II) firearm that is described in 26 U.S.C. 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense; (II) is convicted under 18 U.S.C. 922(d); or (III) is convicted under 18 U.S.C. 922(a)(6) or 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person.

U.S.S.G. § 2K2.1(a)(4)(B). Hernandez-Landeros pleaded guilty to violating 18 U.S.C. § 922(g)(5), which prohibits possession of "any firearm or ammunition" by any person who "is unlawfully or illegally in the United States." *See* CR ECF No. 125 at 1, 7. In his plea agreement, Hernandez-Landeros admitted that he was "an alien illegally and unlawfully in the United States." *Id.* at 7. He also admitted to having possessed a "9mm semiautomatic pistol," *id.*, which meets the requirements of § 2K2.1(a)(4)(B). Both of the elements of establishing a base offense level of 20 were met, and the Court's base offense level calculation was not erroneous.

Since the calculation of Hernandez-Landeros's base offense level was not erroneous, it was not error for his attorney not to object. Neither *Strickland* prong has been met; not only was his attorney's failure to object reasonable, it caused Hernandez-Landeros no prejudice. Therefore, Hernandez-Landeros should not be granted relief on this count.

---

[3] Hernandez-Landeros cites to U.S.S.G. § 2K1.2. Since he quotes U.S.S.G. § 2K2.1, however, it is clear he intends to cite to the latter portion of the guidelines.

4

## B. Failure to Object to Hernandez-Landeros's Enhancement

In calculating the final offense level under the sentencing guidelines, the Court imposed a four-level enhancement for arms trafficking. *See* CV ECF Nos. 1 at 22; 3 at 17. The sentencing guidelines require a defendant's offense level to be increased by 4 "[i]f the defendant engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). This four-level increase "applies if the defendant: (1) intentionally transferred 'two or more firearms to another individual'; and (2) 'had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . who intended to use or dispose of the firearm unlawfully.'" *United States v. West*, 563 F. App'x 745, 747 (11th Cir. 2014) (quoting U.S.S.G. § 2K2.1 commentary). Neither Hernandez-Landeros nor his attorney objected to this enhancement. CR ECF No. 156 at 4.

Hernandez-Landeros now argues that he received ineffective assistance of counsel when his attorney failed to object. He claims that no evidence existed to demonstrate that he trafficked in firearms. CV ECF No. 1 at 21-22. Instead, he argues that his co-defendants possessed the firearms and that "since [he] never transferred any firearms personally to the [ATF] agents," *id.* at 22, his offense level was improperly enhanced and his attorney should have objected.

But Hernandez-Landeros misunderstands the range of conduct taken into account during sentencing. Other relevant conduct can also qualify a defendant for an enhancement, even conduct to which a defendant does not plead guilty. Section 1B1.3 of the U.S. Sentencing Guidelines is entitled "Relevant Conduct (Factors that Determine the Guideline Range)." It provides that "[u]nless otherwise specified . . . specific offense characteristics . . . shall be determined on the basis of . . . all acts and omissions committed, aided, abetted,

5

counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). For "jointly undertaken criminal activity," like the firearms trafficking that took place in this case, a specific offense characteristic enhancement is based on "all reasonably foreseeable acts and omissions of others in furtherance" of that activity. U.S.S.G. § 1B1.3(a)(1)(B). In the context of § 1B1.3(a)(1)(B), a "jointly undertaken criminal activity" is "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." *Id.*

Nothing in § 2K2.1(b)(5) indicates that the relevant conduct rules under § 1B1.3(a)(1) do not apply. Therefore, they do apply. *See United States v. Wrice*, 415 F. App'x 124, 126 (11th Cir. 2011) ("If the Sentencing Commission had intended to limit the relevant conduct that applies to a defendant for purposes of a [§ 2K2.1(b)(5)] enhancement, it would have expressly included a limitation."). Since the relevant conduct rules do apply, the conduct of Hernandez-Landeros's co-defendants in the joint criminal activity was properly taken into account in the calculation of his offense level. He does not dispute that his co-defendants intentionally transferred firearms or that they had reason to believe those firearms would be used unlawfully. His participation with them in a jointly undertaken criminal activity is thus relevant conduct for the enhancement of his offense level. The Court warned Hernandez-Landeros of this possibility when it accepted his plea. CR ECF No. 155 at 13-17.

The enhancement of Hernandez-Landeros's offense level was not erroneous. Since it was not erroneous, it was not unreasonable for his attorney to fail to object to the enhancement, nor did it cause Hernandez-Landeros any prejudice. Hernandez-Landeros has

failed to demonstrate either *Strickland* element necessary to establishing ineffective assistance of counsel here, and thus is entitled to no relief on this count.

### C. Failure to Consult Regarding an Appeal

Hernandez-Landeros also argues that his counsel was ineffective for failing to consult with him about the advantages and disadvantages of filing an appeal. CV ECF No. 1 at 17. Such a failure could constitute ineffective assistance. But that is not what happened here.

"A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Even if a client has not made a specific request of his attorney to file an appeal, "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. The denial of an appeal as a result of ineffective assistance of counsel, deprive the accused of counsel at a "critical stage" and therefore carry a presumption of prejudice. *Id.* at 483. But "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *Id.* at 484. Thus, to invoke the presumption of prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* "When counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* "The duty to consult includes two obligations: to advise the client 'about the advantages and

7

disadvantages of taking an appeal,' and to make a 'reasonable effort to discover' whether the client wants to appeal." *Baughman v. United States*, 319 F. App'x 866, 869 (11th Cir. 2009) (quoting *Flores-Ortega*, 528 U.S. at 471).

Here, Hernandez-Landeros's attorney met both obligations. He discussed an appeal with Hernandez-Landeros. The post-conviction consultation certification, which Hernandez-Landeros signed, indicates that his attorney explained the consequences of not appealing and that Hernandez-Landeros decided not to do so. CR ECF No. 130. On his portion of that certification, Hernandez-Landeros indicated that "My attorney has advised me about the advantages and disadvantages of pursuing an appeal" and that "I have decided not to file an appeal, and my attorney has explained to me the consequences of failing to do so." *Id.* at 2. Even in his petition, Hernandez-Landeros admits that his attorney discussed an appeal with him and that their discussion led Hernandez-Landeros to decide not to pursue one. CV ECF No. 1 at 19. On the opposing side, Hernandez-Landeros provides no evidence that he ever instructed his attorney to file an appeal. Thus, the attorney met all his constitutional obligations.

Hernandez-Landeros has failed to show that his attorney provided ineffective assistance, since his attorney did advise him about the benefits and disadvantages of filing an appeal. Therefore, he should not be granted relief on this count.

## II. Hernandez-Landeros's plea was not involuntary.

Hernandez-Landeros also argues that his guilty plea was not voluntarily given. CV ECF No. 1 at 24-26. The record squarely contradicts his claim.

The Eleventh Circuit has explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core

8

principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

The Court addressed each of these core principles at sentencing. First, at sentencing, Hernandez-Landeros testified under oath that he had been given sufficient time to speak with his attorney. CR ECF No. 155 at 10. He testified that he had spoken to no one else about his decision to plead guilty. *Id.* at 10-11. He admitted that he was pleading guilty because he was in fact guilty, *id.*, and he testified that he was pleading guilty "freely and voluntarily," *id.* at 19. Second, the Court ensured that Hernandez-Landeros understood the nature of the charges against him. The Court outlined the charges and highlighted the charge to which Hernandez-Landeros was pleading guilty. *Id.* at 11-13. The Court also ensured that Hernandez-Landeros understood that other relevant conduct could play a part in the calculation of the sentence. *Id.* at 13. Finally, the Court explained to Hernandez-Landeros the consequences of a guilty plea. The Court explained that the dismissed counts could still be taken into account during sentencing, *id.* at 13, that he would lose certain rights, *id.* at 8-9, and that he could face deportation after the completion of his sentence, *id.* at 9.

The Court's colloquy fully ensured that Hernandez-Landeros's guilty plea was entered freely and voluntarily, without coercion. Hernandez-Landeros "swore during the plea colloquy that he committed the alleged offense, understood the possible consequences of his guilty plea, and waived his right to trial. There is a strong presumption that the statements made during the colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (quotation marks and citation omitted).

Therefore, because Hernandez-Landeros's guilty plea was not involuntary, he should not be granted relief on this count.

### III. The Ippolito and Valoze Relationship

In his supplement to his § 2255 petition, Hernandez-Landeros argues that the failure of the government to disclose the improper relationship between AUSA Ippolito and Agent Valoze constitutes misconduct that justifies relief. CV ECF No. 11. He is again incorrect.

The fact of the relationship between Ippolito and Valoze represents only impeachment information and "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphasis in original). By pleading guilty, a defendant waives the right to a fair trial and the concomitant right to exculpatory impeachment material. *See id.* While such information may have made Hernandez-Landeros "more aware . . . of the likely consequences of a plea, waiver, or decision, . . . the Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* All that the law requires for a knowing, intelligent, and sufficiently aware waiver of a right to a fair trial by way of guilty plea is that "the defendant fully understand[] the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed consequences* of invoking it." *Id.* (emphasis in original).

Further, even assuming *arguendo* that the Government's failure to disclose impeachment material in this instance is cause for constitutional concern,[4] Hernandez-Landeros not only swore to the facts underlying the offenses to which he pleaded guilty, but

---

[4] In *Ruiz*, Justice Thomas read the majority as "suggest[ing] that the constitutional analysis turns in some part on the 'degree of help' such information would provide to the defendant at the plea stage." *Ruiz*, 536 U.S. at 633 (Thomas, J., concurring).

10

he also swore to the accuracy of Agent Valoze's account of the events underlying the offenses to which he pleaded guilty. CR ECF No. 155 at 22. "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stizer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (citing *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). In light of the ample warnings from the Court during the plea colloquy regarding the consequences of pleading guilty and admitting the facts alleged in the indictment, it is exceedingly unlikely that disclosure of impeachment material satisfies the heavy burden of asserting that Hernandez-Landeros's statements made during that colloquy were false. *Cf. United States v. Hauring*, 790 F.2d 1570, 1571 (11th Cir. 1986) (concluding that, after entering a guilty plea, "any subjective belief" that the petitioner "would later be permitted to withdraw his plea and replead to a lesser charge was unjustified").

Therefore, the fact that the Government did not disclose impeachment material prior to Hernandez-Landeros's guilty plea does not entitle him to relief.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Hernandez-Landeros's § 2255 petition be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 30th day of June 2015.

JAMES E. GRAHAM
MAGISTRATE JUDGE

11